# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| DAVID TOM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>FORBES & YORK INSURANCE LLC D/B/A MEDADVANTAGE PARTNERS<br><br>AND<br><br>THE ASSURANCE PIVOT, LLC D/B/A SKYBRIDGE LEADS<br>         Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff David Tom ("Mr. Tom"), by his undersigned counsel, for this class action complaint against Defendant Forbes & York Insurance LLC d/b/a MedAdvantage Partners and The Assurance Pivot, LLC d/b/a Skybridge Leads, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.   INTRODUCTION

1.   <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between

'[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)."

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.   PARTIES

5. Plaintiff Tom is an individual who resides in the Middle District of Florida.

6. Defendant Forbes & York Insurance LLC d/b/a MedAdvantage Partners is a Florida LLC that sells insurance throughout the United States, including Colorado. Defendant Forbes & York contracted with Defendant Assurance Pivot to generate illegal leads using calls to numbers on the National Do Not Call Registry.

7. Defendant The Assurance Pivot, LLC d/b/a Skybridge Leads is a marketing company that makes illegal telemarketing calls specializing in obtaining customers interested in insurance. Its headquarters and principal place of business is in Brighton, Colorado.

## III.   JURISDICTION AND VENUE

8. <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

9. <u>Personal Jurisdiction</u>: The Court has specific personal jurisdiction over Defendants because they contracted with each other in Colorado to send illegal telemarketing calls nationwide, including into Colorado and/or from Colorado.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were orchestrated from this District.

## IV.   FACTS

### A.   The Enactment of the TCPA and its Regulations

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

### B.   The Florida Telephone Solicitation Act

16. The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

17. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." FLA. STAT. § 501.059(8)(a).

18. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." FLA. STAT. § 501.059(1)(i).

19. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

**C.   Unsolicited Telemarketing to Plaintiff**

20. Plaintiff Tom is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21. Defendants were and at all times mentioned herein were "persons" as defined by 47 U.S.C. § 153(39).

22. At no point did the Plaintiff consent to receiving telemarketing calls from the Defendants prior to receiving the calls at issue.

23. Plaintiff's residential landline telephone number is (321)-7XX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

24. Plaintiff's residential cellular telephone number is (321)-9XX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

25. Both Numbers are non-commercial telephone numbers that are primarily used for residential purposes.

26. Plaintiff Tom uses the Numbers for personal, residential, and household needs and reasons.

27. The Numbers are residential telephone lines because they are assigned to a telephone exchange service for consumers and are not assigned to a telephone exchange service for businesses.

28. Both Numbers have been on the National Do Not Call Registry for years prior to Mr. Tom registering them on the Registry, and years before receiving the calls at issue.

29. Plaintiff received multiple calls to the Numbers pitching Medicare health plans throughout March of 2024 from various illegally "spoofed" caller IDs.

30. The Plaintiff has no need for Medicare since he is not eligible for the same due to age. Accordingly, the calls were all placed blasting all numbers in the 321- area code without regard of who they were calling.

31. Each call started with silence before a "bloop" sound and an agent joining the line. This sound is indicative of the ViciDial autodialer and is officially known as the "droplet" sound. It is played automatically as part of a macro when the Asterisk "meetme" application is executed and signifies that a new connection was established between the called party and a call center representative.

32. Furthermore, ViciDial comes programmed as standard to be able to randomize telephone numbers and caller IDs. The fact that the caller IDs were randomized and "spoofed" also lends credence to the inference that the Plaintiff's telephone number was also randomized and randomly or sequentially generated.

33. During each of these calls, the callers illegally stated that they were calling from unrecognizable, generic names, attempted to sell health insurance, and were unable to transfer the calls to an actual, licensed insurance agent because Mr. Tom's Numbers were on the Do Not Call Registry.

34. It is evident that Defendants programmed or instructed programming their autodialer to dial numbers randomly or sequentially and only verify, or "scrub," such numbers for inclusion on the Do Not Call Registry after the illegal call is placed.

35. In order to identify the caller who kept illegally blasting his Numbers and for no other reason, Mr. Tom provided a number of his that was not on the Do Not Call Registry, (321)-3XX-XXXX.

36. Thereafter, the Plaintiff received a call on March 14, 2024 at 15:54 EST from the Caller ID 432-588-5595.

37. During that call, Defendant Assurance eventually transferred the call to "Febreze," a "licensed agent" with "MedAdvantage Partners," to attempt to pitch Mr. Tom Medicare Health Plans.

38. When Mr. Tom asked for Febreze's license number, Febreze responded by saying "we already know what [your request] is for," insinuating that Mr. Tom was going to sue Defendants for violating the TCPA.

39. Febreze then stated, "How much money do you get off of that? Who knows? Wierdos."

40. The foregoing statements and behaviour indicate that Defendant Forbes & York knowingly violates the TCPA and has evidently dealt with TCPA complaints before.

41. Plaintiff Tom never consented to receive calls from Defendants.

7

42. Plaintiff Tom never did business with the Defendants.

43. The calls were unwanted.

44. The calls were nonconsensual encounters.

45. Plaintiff, through counsel, then contacted MedAdvantage Partners and its counsel to ascertain why Plaintiff was receiving illegal calls.

46. Neither Plaintiff nor counsel received a response.

47. A subsequent investigation by counsel and as informed by a confidential third-party informant advised that MedAdvantage hired Assurance to conduct illegal telemarketing for it and placed the illegal calls at issue.

48. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

49. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

50. The FCC has instructed that sellers such as MedAdvantage Partners may not avoid liability by outsourcing telemarketing to third parties, such as Assurance:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

51. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

52. MedAdvantage Partners is liable for telemarketing calls placed by Assurance and transferred to MedAdvantage Partners to generate customers for MedAdvantage Partners, including the Plaintiff.

53. MedAdvantage Partners was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

54. To do so, it hired Assurance to orchestrate an *en masse* telemarketing campaign.

55. MedAdvantage Partners controlled the day-to-day activities of Assurance by providing the specific criteria for the leads it would accept and required its vendors, including Assurance, to adhere to those criteria.

56. For example, MedAdvantage Partners directed Assurance to conduct live transfers to numbers it verified were not on the Do Not Call Registry prior to transfer, but permitted Assurance to place calls as an initial matter using automated means to numbers without regard to their registration status.

57. For example, the calls Plaintiff receive demonstrate that MedAdvantage Partners had representatives who were trained to belittle and insult the people they called illegally whose numbers are on the Do Not Call Registry.

58. As such, MedAdvantage Partners controlled the content of Assurance's telemarketing.

59. Finally, MedAdvantage Partners could have terminated Assurance once it learned of Assurance's illegal marketing conduct.

60. It did not.

61. Indeed, it doubled down and refused to respond to a complaint alleging that illegal calls were being placed on its behalf.

62. A reasonable seller whose telemarketers are making calls would not practice willful ignorance into that marketer's phone lists, scrubbing, registration, and regulatory compliance.

63. Moreover, a reasonable seller would also investigate into the reasons why their marketer would be calling numbers on the National Do Not Call Registry and, moreover, individuals they suspected would sue them.

64. MedAdvantage Partners hired Assurance without a proper investigation and did not terminate them when they were informed of Assurance's illegal calling conduct.

65. As such, they knowingly ratified Assurance's conduct.

66. MedAdvantage Partners accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to him.

67. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon

10

the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

68. Plaintiff's privacy has been violated by the above-described telemarketing calls.

69. Plaintiff never provided his consent or requested the calls.

70. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, devoting time, attention, and labor for livelihood and profit pursuant to 18 U.S.C. § 921(a)(21), and performing other critical tasks.

## V. CLASS ACTION ALLEGATIONS

71. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Classes (the "Classes") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Forbes & York or Assurance, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S., who, (1) received a telephonic sales call regarding Forbes & York's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

72. Excluded from the Classes are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

73. The Classes, as defined above, are identifiable through telephone records and telephone number databases.

74. The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

75. Individual joinder of these persons is impracticable.

76. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

77. Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the class members.

78. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

79. This class action complaint seeks injunctive relief and money damages.

80. There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

   (a) Whether the Defendants sent telemarketing calls to numbers on the National Do Not Call Registry;

   (b) whether the Defendants used automatic equipment as defined by Florida law to send telemarketing calls;

   (b) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

   (c) whether Defendants' conduct constitutes a violation of the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

(e) whether Defendant Forbes & York is vicariously liable for calls placed by telemarketing vendors, including Assurance.

81. Plaintiff's claims are typical of the claims of the Classes, as they arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

82. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

83. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

84. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes

consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

85. Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

86. Plaintiff incorporates the allegations in paragraphs 1-85 as if fully set forth herein.

87. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

88. Defendants' violations were negligent, willful, or knowing.

89. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

90.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,
Fla. Stat. § 501.059
On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

91.     Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-86 as if fully set forth herein.

92.     Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendants.

93.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." FLA. STAT. § 501.059(8)(a).

94.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." FLA. STAT. § 501.059(1)(i).

95.     Defendants failed to secure prior express written consent from Plaintiff and the Class Members.

15

96.  In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

97.  Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

98.  As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.  Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, to numbers on the National Do Not Call Registry in the future;

B.  Certification of the proposed Class;

C.  Appointment of Plaintiff as representative of the Class;

D.  Appointment of the undersigned counsel as counsel for the Class;

E.  That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

F.       An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

G.       Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.       DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this May 2, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*